Good morning, Your Honors. May it please the Court, my name is Beth Gunn and I represent Appellant Bath & Body Works, LLC. This appeal asks the Court to determine what is a workable methodology for estimating the amount in controversy for cases removed pursuant to the Class Action Fairness Act. Counsel, if I am not mistaking it for a different case, is this not the case in which opposing counsel says, you know, there's some good evidence that the district court ought to look at, we don't object if it's vacated and remanded? I believe it is that case. Is that satisfactory to your client if that happens? Well, yes, the ultimate goal here is to have the case remanded and considered. However, I do think it's important since the district courts address these issues sui sponte that the district court be provided with some guidance as to what needs to be determined when estimating the amount in controversy. Well, we have a couple of other cases on our docket this morning that raise essentially the same issues in that they are employment cases and Catholic cases that deal with this question of assumptions and estimations. But I just wanted to be sure that the solution proposed by opposing counsel is sufficient for your purposes. It is provided that there are instructions that would be useful and directly relevant to our case. To the extent that the district courts or that the other cases that will be addressed today do not deal with the same specific issues that we have, I do think it might be worth discussing those and making sure that we... The fee questions? The fee questions, the PAGA penalty questions, the fact that our original amount in controversy calculations were based on waiting time penalties. And I think that was specifically alleged in the complaint as to how many days of waiting time penalties. We use a very specific formula regardless of how the court rules on ultimately how you assess the amount in controversy. Well, I guess, is counsel for the other side conceding that the amount in controversy of $5 million has been satisfied or not? I'm a little bit unclear on that. Relax. Well, I guess if you think it has been, why aren't you just arguing to reverse the court and that you don't have to do the hearing over again? Is vacate... This remand order arose as a sua sponde remand order, so we don't really have any way of telling the district courts to reverse this decision. That would be... We do. You would have the ability to do that? We don't have... As far as you feel, we don't have that. Do you have two levels of saying you put enough evidence in and so that the amount in controversy of $5 million has been satisfied, therefore, end of story. But if that isn't true, you want to vacate and remand in light of whatever we say and add to the record? I don't know what's... I think that's... If I'm understanding your question correctly, I think our position is that, yes, if the appellee's counsel agrees that we have submitted enough evidence to satisfy the amount in controversy, and that is sufficient to tell the district court that, yes, all the parties agree. We've looked at it. We agree. You were wrong. We're going to reverse your order, and you have jurisdiction. That would be one way of handling it. Another way of handling it would be to say, look, the parties agree. We're sending this back to you to reconsider your sua sponte remand order, and if that happens, then we need the district court to have some guidelines to follow in determining how you look at amount in controversy. Let me ask you this. The material that the opposing counsel has talked about has to do with the sample data and is not about fees. And I wonder if what I'll call the substantive part of the case potentially would yield more than $5 million, why would we go on to consider the other legal issues that may be more difficult, that is the questions about the private attorney general fees and so on? Presumably you would not. The way I see this case is that there are a couple different levels at which this court could make its decision. The first level is to agree with what was set forth in our papers, that the amount in controversy is dependent on the number of potential instances where a violation could occur, each meal period eligible shift, each rest period eligible shift, and that we would look at all of those. We wouldn't limit it in any way. We wouldn't say, well, we wouldn't talk at all about what the frequency of those violations would be, because once you start talking about frequency of violations, you're conflating it with the idea of what the potential actual damages will be, and we think that's impermissible. So, I mean, you're essentially saying that the way that you're supposed to look at this is, you look at the complaint and what are they saying, and so you assess your vulnerability, and if you could be liable for over $5 million based on the way that they have pled the case, then the amount in controversy of $5 million has been satisfied. Correct. And you have 140 pages that you submitted on that point, right? Yes. Well, we had two rounds of submissions. The first one was not as detailed. It had to do specifically with one claim, which was the waiting time penalty claim. Yeah, and the waiting time, as I understand it, on the waiting time claim, there was a sample done so that there wasn't just a wild estimate. There was an actual sampling done to determine what the rate of potential liability could be. That's essentially accurate. What we did is we identified all of the individuals who, if they had one violation occur to them over the course of their employment, would be entitled to waiting time penalties if they were successful. So, if they're successful, they'd be entitled to waiting time penalties. We did a calculation of what 30 days of their waiting time penalties would be for each person's specific average hourly rate. It was after that, so that's what we first submitted. It was after that the court said that he didn't think that we had submitted enough information to satisfy the amount of controversy and asked for a sample data set. The sample data set that we submitted was extremely detailed, but it was more than just the waiting time penalties calculations. It was all of the, it was a calculation for all of the claims in the case. So, it does depend to some degree on what this court determines is reasonable because we took some estimates at that time the legal certainty standard was in place. So, modeling our assumptions on what had been accepted under previous courts as a 20% violation rate, we tried to isolate individuals that you could say, there's no way that they wouldn't be covered by this complaint, and then we assessed a 20% violation rate for each one of the claims at issue, and that's what we did. Counsel, Judge Gould, if I could interject a question. If in one of the other cases, we wrote an opinion setting out what we think are clear standards to prove or to show amount in controversy, and if we remanded this case on an open record so that both your client and the plaintiffs could submit anything else they wanted to the district court, would that be agreeable? In other words, would that work? Because it's sort of awkward if there might be the right amount in controversy on a simple theory to address a whole bunch of alternative theories. I see what you're saying, Your Honor. It would certainly be more agreeable than the court not remanding the case at all. I would, we would prefer that this court just, we spent a lot of money, we've gone through this, we would prefer this court give us some finality so that we don't have to go through more rounds of briefing and more rounds of submitting evidence. Potentially going back on an open record, it doesn't say that you're not enough, but it doesn't say you are enough. And what you're saying is you think you've done more than enough at this point under any standard, and so don't make us just continue to do this. I am saying this. I think my preference would be if the court agrees with us ultimately, after hearing from all of these other cases, and determines that our concept of the amount in controversy as being 100% of potential instances in which a violation could occur, that would be the most beneficial to us. That would be one very discrete issue. It's the overriding issue. But you didn't actually do that. In your materials, you've got, as you just said, the 20% violation rate is your assumption. Well, actually, in our original materials, we did submit a 100% violation rate for all of the waiting time penalties. So that issue could be decided on that alone. We submitted that the waiting time penalties, we submitted how many instances there were and what the value of those instances were, and that was our very first attempt to remove the case before we supplied additional information. We thought that was sufficient. That's what we would like the court to say, you know, this is enough. This is going to take a little bit of time, but I hope my colleagues don't, because I'm going to ask it of other people, because if it's published on one and not on the others or whatever. All right. Just so that we, I want to make sure that I understand from the standpoint. Okay. After standard fire, then in Rodriguez, we said that it's preponderance of the evidence. But then there are other cases out there that talk about what you present to satisfy. So do you agree that the burden is preponderance of the evidence? Yes, I do. All right. But then we have in other cases, we have things like reasonable and plausible. And then we also have the language of summary judgment type evidence. Explain to me from the perspective, my understanding of when you ask to remove under CAFA, that generally happens pretty early in the proceeding. And so you haven't necessarily started discovery. Is that correct? That is correct. So when we're talking about summary judgment type evidence, it may not be some of the things that you have in, you're not taking depositions necessarily, but it could be declarations. It could be all of those types of things. Correct. So if we make it so it has to be exactly like the summary judgment, that's not going to work in these cases, right? Well, I disagree with that, Your Honor. Here's why. I think that the summary judgment... No, no, no. But I think that could higher the burden. You know, what... Well, I mean, if people are making these motions before they've even taken any depositions, it somehow has to be possible that you can satisfy that, right? Correct. And I think it can be satisfied if you think about the summary judgment style evidence as applying directly to what the amount in controversy is. So if the amount in controversy, this is the thing that we have within our control, is to identify potentially the number of shifts that have been affected by these allegations in the complaint. And the plaintiff is the master of the complaint, has fled it in such a way that it opens the door that the amount in controversy could be all of these things. Well, it could, but my question comes at it from kind of the other end, because you started by saying your legal position is that you should be able to use 100% rate. If the complaint is that the employer had a policy and practice of not paying overtime, then you will assume, you want to be able to assume that 100% of the employees during that time period who were non-exempt would be covered by that. But if you have a complaint that says, say, the police department has a pattern and practice of using excessive force, you wouldn't expect 100% of the arrestees to be beaten up. It would be a huge problem if 10% of them were. So why is 100% a reasonable assumption without some evidence to back it up as to what actually occurred? I mean, I know this creates kind of a strategic problem for you because you don't want to make the plaintiff's case by saying, well, we know that in fact everybody worked overtime and wasn't paid for it. But on the other hand, how can you satisfy a preponderance of the evidence standard without evidence? I think this all goes back to what the concept of amount in controversy means. So we think it means what's at stake. And I think I would disagree with you somewhat that if someone alleges a pattern and practice that affects a large number of people and it doesn't specify or qualify in any way how those people might be affected, then presumably until we know more, all of those people, that's all on the table in this case. And in a wage and hour case, it's even easier to make that assumption because they're alleging that there are pay pattern and practices that go on, on a class-wide basis that affect these employees. So these people are employees. We can tell if they've had a rest period eligible shift. We can tell if they've had a meal period eligible shift. We can tell if there's a wage and hour shift. Why would we assume that just because sometimes this employer disregards their rights under the statute that it does so 100% of the time? Well, I think for amount in controversy, the other side, the plaintiff, is alleging that that's what's at stake. I understand that. If you have a practice you're saying equals, that's what you do, which would mean you do it 100% of the time. That's correct. Yeah, counsel, go ahead. I was just going to say, if there's a pattern of practice, your argument seems to be that that means one always does it. Pattern of practice means always. But literally, pattern of practice doesn't mean always. And Judge Graper's example, hypothetical, I thought was important. That is, if there's a pattern of practice of excessive force in a police department, which, as we know, does happen in some departments, does that mean that they beat up every single Rustian? You know the answer is it doesn't mean that. Well, this is where I think that the Lewis v. Verizon case is very instructive. In that case, it dealt with – and there are other – the First Circuit, the Fourth Circuit, the Seventh Circuit, and the Eighth Circuit have agreed with that case, and that's the Ninth Circuit case as well. So this has been the rule in Catholic cases, that what we look at is not necessarily whether the damage occurred. In the Lewis case, it was dealing with unauthorized charges. And the court said the amount of controversy includes both the unauthorized charges and the authorized charges, because at that point in the case, we don't know which one is which. And to force a defendant to submit evidence at any point in the case to distinguish which ones are authorized and which ones are not authorized is tantamount to asking the defendant to prove a prospective evaluation of their own damages. Well, that's why I said earlier that it does create a strategic dilemma for you, but that doesn't mean that it isn't what is required by the circumstances, because it is up to the removing party to show that removal is proper. You would agree with that? I do agree with that. And you agree that you have to prove or demonstrate by a preconderance of the evidence that the amount of controversy is more than $5 million? I do agree with that. So then the question becomes, in the ordinary case, when there is an amount of anything to be proved, it has to be proved with some reasonable amount of specificity. Whatever it is, in any kind of litigation, there has to be something that is arguably correct about an assumption that goes into proving whether it's damages or amount in controversy or lost wages or whatever it may be. It can't be done by supposition. And so I guess that's what we're struggling with, how much supposition is permitted in this circumstance. And if it puts defendants to a difficult choice about how much they want to divulge, so be it. We have to look at what the statute and the cases provide. And I think my response to that is that when you start thinking about – what you're talking about is adjusting the amount in controversy to compensate for the defenses that the defendant is going to be able to assert at some point down the road. But I think that's improper at the stage of looking at the amount in controversy. I mean, we could ultimately prove that 0%, it doesn't matter what they're alleging, it doesn't matter how frequently they think things happen, we could ultimately prove that 0% is what really happened, based on the way we really do things. But what you're asking us to do, it seems to me, is where a complaint says this problem happened to me and it happened to some other people, too. But it doesn't say it happened to everybody. So when it says it happened to me and it happened to some other people that are similarly situated, how are we supposed to set a standard for what kind of supposition, guesswork, speculation, estimate is proper in that circumstance? I think there's only one way to do it, and that's to require the defendant to submit summary judgment-style evidence of a couple of things that really do affect who could be encompassed within the scope. Well, I think from – I've been thinking about this excessive force thing. I think it's different than yours, because if you have a pattern and practice of what was it they're alleging, a pattern and practice of what? Not providing meal periods. Not providing meal periods. Not authorizing or permitting rest periods. Okay, so that, the thing is, if you don't provide them, if you have a pattern and practice of doing it, that's behavior with indifference. A pattern and practice of excessive force, yes, there could be a training issue or they could be saying things, but then you've got to go to the individual officers to see if they've actually been in some sort of thing. Here, all the people have to do is show up, and if you have a pattern and practice of not giving meal breaks, then your exposure is that you're not giving them to any of the people that are there, right? Right. Is that their allegation, that nobody got a meal break? They don't specify who got meal breaks and who didn't, and that's where, as the master of the complaint, if you don't have any qualifications in there, it's all on the table. Well, I'm not sure why that's true. If you say, this happened to me and it happened to some other people, but until discovery I don't know whether it's five other people or everybody, why should we allow the assumption that it's everybody? Because what if in discovery they discover that it's 100%? Then you can remove them. The removal statute under CAMFA is not limited to the short period of time, like other kinds of removal. So, why doesn't that counsel then that you need to wait until you have that kind of evidence? Well, number one. You have to file within 30 days of when you're on notice. Correct. So, if you're saying when you look at this complaint and saying, I feel like I'm on notice that we don't give any of it, then, okay, but then you wait and get more evidence and then it becomes really clear, then they're going to argue that you waited too long. Correct. That the 30 days are gone. Correct. Number one, there's always a question as to whether or not this evidence that was within our control, it was in our possession at the time. We know how many meal period eligible shifts there were. We know how many people were in the PE class. We know how many of them were former employees. We know what their average shift length was. And you don't know what percentage of them didn't get a meal period. And we won't know that until the very end of the case. So, that's not the question to ask at the outset of the case. No, but that's what I'm struggling with and what you're struggling with is how do we decide. You're saying just do 100%. It's easy and we win. And, you know, but it turns out that you came back and said 20% and your opposing counsel said, well, that's just guessing also, but we'll live with it as I understand their position. I mean, a couple things. We said 20% when the legal certainty standard was still in place. So, now there's a different standard. And I think our papers make it very clear that this is the traditional idea of a mountain controversy. It is not how much ultimately can be proven. It is not how much the damages are going to be at the end of the day. It is at the outset what's the highest end that we might be responsible for. And that's what we think is consistent with the line of jurisprudence regarding a mountain controversy forever. And there's no reason to take a different tack in Catholic cases, particularly since the Catholic statute specifically states that it is, it was designed to expand federal jurisdiction in these kinds of cases. So, we've taken you way, way over your time. So, we'll let Mr. Wu. No, we didn't. I apologize. We did. Thank you for listening. Good morning, Your Honors. May it please the Court, Ryan Wu replacing Glenn Gannis on behalf of Kathleen Jones. So, did you concede that the five million amount in controversy requirement has been satisfied? Yes. So, why don't we just reverse and be done with it and tell the district court it has jurisdiction. In this case, we have other cases. We can do all the jurisprudential theorizing. Yes, we agree that this case should be remanded. And I think Judge Gold's recommendation. No, that's not what I asked you. If you agree that there is five million amount that that has been satisfied, then you're not going to relitigate Catholic jurisdiction. It's done. We do not disagree with, we would not oppose, or we don't want to contest a summary reversal. Okay. I mean, that seems like the end of the matter in my view. If both parties would like it to be in federal court or are willing to say that there is jurisdiction, then it seems like we're done on this case. We didn't move to remand. You know, when we got the notice of removal and we saw that there were 12,000, you know, former employees, we thought this was a case that belongs in federal court. Okay. So, then we wouldn't deal with the pocket issues and all of that. We don't think you need to reach the pocket issues or the attorney's fees. Because as you, I think to use your words, it eclipsed the five million dollars without ever getting to anything exotic. Yes. And I think just to sort of make one additional point, you know, as plaintiffs, we don't have all the information. Even though Loudermilk was overruled on the specific point of legal certainty, it does have this, it goes through this analysis about the employer having all of the information, all of the records. When the employer produces information on removal, such as the DW here, and they provide substantial evidence. But admittedly, when you file a case and you say an employer has a pattern or practice of something, I still, I mean, since you're conceding the five million dollars now here, but I'm still struggling with the fact of why then can't they respond? They do have all of the records, but why can't they look at the way you frame the complaint? Because you've talked to these people, you know what's happening, and when you say there's a pattern of practice, they have to look at it and say, okay, so what's my exposure? And I have to look at if I have a pattern of practice, it is not improper for me to assume that all of the people that work for me are not getting their meal and rest breaks, and so our potential exposure is what, 12 million dollars or five million dollars or whatever. What's wrong with that? I mean, you could get more specific if you have, you know what these people are claiming. In wage and hour cases, oftentimes the actual missed breaks, for example, can be tricky. It could be, you know, we could have an employee that tells us that she missed breaks, and it turns out that it's the second missed rest break, for example, a missed rest break that would occur only if she were to work a certain number of hours in a shift. Okay, but that won't be known until everyone has their depositions taken, right? Yes. And then if they decided to remove under CAFA at that point? That would be fine. I think there's been a number of cases from the Ninth Circuit. Would you then argue that by virtue of your complaint, you put them on notice that it was everyone? There's the Roth versus CHA. And then say, you didn't file it within 30 days. You can't file it now. Well, I think the recent cases in the Ninth Circuit have provided the defendants with the capacity to remove upon finding a new evidence, and the standard seems pretty lax. The Roth versus CHA case and also Leah versus Michaels provide sort of good basis for, you know, when the defendant finds a document in his possession that establishes that $5 million and controversies have been met, even if it's, you know, three months into the litigation, the defendant can produce the document and remove. There's a case the defendant cites, Campbell versus Mitron. That's an unpublished Ninth Circuit case. And there, the case was first remanded back to state court. The defendants took the deposition of the plaintiffs. The plaintiffs said on the record that they were never allowed meal breaks. The policy of the employer that they were never allowed to take meal breaks. So on that evidence, along with some other things, the defendant removed again and the Ninth Circuit said, okay, this evidence is sufficient to establish by a legal certainty, which is the standard at the time. Do you think that Lewis has some applicability here? Lewis is a consumer case, and I think wage and hour Right, but would you consider it if I said to you, okay, Lewis has no applicability because it's a consumer punitive class, and this is an employment case? I think in the context of employment cases where oftentimes the theories involve a specific segment of the class, you know, people don't qualify for meal breaks. For example, if there are people who work three hours in a shift, they wouldn't qualify for a missed meal break. The defendant, if they don't produce any evidence Does Lewis have any applicability to this type of case? The general principles, I think there are general principles stated in Lewis that may be applicable. Which would be that the part of seeking removal bears the burden of showing by preponderance of the evidence. Yes. That's applicable. Yes. Counsel Judge Gould, if I could just interject a question. I'd like to get back to Federal Courts 101 Basic Law. The Bed and Bath removed the case contending there was $5 million in controversy. If you now say, based on your evaluation of their evidence, they've shown sufficient $5 million in controversy, then it seems to me that we summarily reverse the case, send it back, and it's in federal court. Although a lot of interesting issues might be posed, we're not supposed to give advisory opinions. That's really my question. If both sides are telling us there's $5 million in controversy, then isn't that sort of the end of the case for us? We send it back. And despite how interesting some of the issues might be for CAF jurisprudence, we don't say anything in this case on those issues. Yes, Your Honor. And on that, I will submit. Thank you, Counsel. Ms. Gannon, I think you have used up all your time and then some. So we'll talk to you. And we appreciate the very helpful comments that both of you made. That case is submitted. And now we'll get to a couple where we think there may be more of a controversy still going on.
judges: Graber, Gould, Callahan